Filed 2/22/24  P. v. Campos CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>HUGO ENRIQUE CAMPOS,<br><br>        Defendant and Appellant. | A164118<br><br>(Contra Costa County<br> Super Ct. No. 52100345) |

Defendant Hugo Enrique Campos struck and killed a pedestrian while driving under the influence of alcohol.  He appeals from a conviction of second degree murder on the ground of instructional error, and he asserts that enhancements under Penal Code section 12022.7[1] must be stricken because they are unsupported by substantial evidence.  We agree with the latter argument and strike the enhancements.  As modified, we affirm the judgment.

---

[1] Undesignated statutory references are to the Penal Code.

1

# BACKGROUND

## I.

### *Factual Background*

**A. Events Leading Up to the Collision**

On July 4, 2020, Campos and his girlfriend Alexis P. attended a Fourth of July party at the home of Alexis's mother on Shore Road in Bay Point, California. Many people in the neighborhood were outside throughout the afternoon and evening cooking food and setting off fireworks in celebration of the Fourth of July.

Campos was sober when he arrived at the party. However, he left the house around 2:00 p.m. and did not return or answer his phone. Alexis P. and her friend drove around looking for him. When Campos finally returned around 6:00 p.m., he smelled of alcohol, was slurring his speech, fell against his girlfriend and into a fence, and yelled profanities at passing vehicles. None of the people present at the party saw Campos drinking; however, they assumed, based on his conduct, that he was intoxicated or "on something."

F.V. took Campos's car keys and told him that he should not be driving. She told him to "eat something," then had him lie down in her van which was parked nearby. Campos left the van after threatening to burn it down. He demanded that F.V. return his car keys but she refused. Campos told his girlfriend that he wanted to drive to his mother's house in Pittsburg. He became loud, angry and upset, and demanded that she return his keys. Alexis P. told whoever had Campos's keys not to give them to him because he might kill himself or someone else. Despite his own belief that Campos was not in a condition to safely drive, Anthony C. gave Campos his keys and told him to sleep it off in his car, as he had on previous occasions.

2

Campos sped off in his SUV on Lakeview Drive at 50 miles per hour, causing people to jump out of the way to avoid being hit. He passed the house on Shore Road more than once, speeding and driving erratically. Witnesses who were outside other residences in the neighborhood estimated he was driving 60 to 65 miles per hour.

## B. The Collision and Immediate Aftermath

Raymond McDaniel and his wife were outside on Shore Road between 9:00 and 10:00 p.m. McDaniel was in the street setting off fireworks when a fast-moving dark SUV struck him without slowing or stopping.

David H. was outside on Shore Road when he saw a dark SUV drive by, swerving, at 60 to 80 miles per hour and then heard it hit something. He got into his vehicle to locate the SUV. He saw the SUV stopped near the intersection of Lakeview Drive and Shore Road with people surrounding it screaming and kicking the doors. Campos yelled, "I crashed, I crashed." People tried to remove Campos from the SUV, but he sped away.

Shortly after 10:00 p.m., while driving near Port Chicago Highway toward Pittsburg, T.T. noticed a small SUV with a damaged right front, driving "a little erratic." She thought the driver—who she later identified as Campos—was inebriated because he looked at her through his passenger window then fell over into the passenger seat. She called the California Highway Patrol (CHP) to report the incident.

## C. The Investigation

CHP Officer Matthew McCants investigated the collision. He noted that Shore Road was a 32-foot-wide residential street without a posted speed limit, which meant that the speed limit was 25 miles per hour. He saw vehicle debris in the middle of the street near the collision site. Witnesses told the officer that McDaniel had been approximately 10 feet from the curb

3

when he was struck.  His body had traveled over 60 feet and landed on a parked vehicle.

Later that evening, another CHP officer located Campos at his mother's address in Pittsburg.  Campos was standing near the open driver's door of the SUV holding the keys and his cell phone.  McCants went to that location. There he saw that the right front section of Campos's SUV was damaged. McCants smelled alcohol on Campos and noticed that his eyes were red and watery.  He administered field sobriety tests and a PAS breath test. Campos's breath samples were tested at 12:10 a.m. (0.119 per blood-alcohol content) and 12:13 a.m. (0.112 percent blood-alcohol content).  McCants arrested Campos for driving under the influence.

Later at the CHP station, Campos was offered a breath or a blood test. He selected a breath test which was performed at 1:06 a.m.; the results were 0.085 on the first sample and 0.089 on the second.  Campos elected to take a blood test after the breath test.  His blood was drawn at 2:28 a.m.  The result from the blood test was 0.067 blood alcohol content with a margin of error of plus or minus 0.0058 percent.

**D. Expert Testimony**

Criminalist Denise Gallagher testified that "Alcohol can affect the person's ability to safely operate a motor vehicle. . . .  Most people are impaired by a 0.05 percent, but all people are impaired for the purpose of driving at 0.08 percent."  She explained that the rate at which alcohol is eliminated from the body varies:  the range of elimination is typically 0.010 to 0.025 percent per hour, with experienced drinkers "tend[ing] to eliminate a little bit faster."  In response to hypothetical questions posed by the prosecutor, Gallagher opined based on the breath and blood test results that the individual's blood-alcohol level at 9:55 p.m. would have been 0.112 to

4

0.179 percent, depending on the elimination rate. When asked to assume the field sobriety test results, the breath test results, the blood test results, and that the individual was driving 60 to 70 miles per hour on a crowded residential street at 9:55 p.m., Gallagher opined that "this person [was] impaired for the purposes of driving."

A forensic pathologist performed an autopsy on McDaniel and described the injuries he sustained in the collision. The pathologist testified that McDaniel suffered a subarachnoid hemorrhage around the brain stem which "is often, by itself, a fatal injury." He opined that McDaniel would have been rendered immediately unconscious from the brain injury and most likely died within five minutes of impact.

### E. Prior Incidents Involving Drinking and Driving

Campos pled no contest to driving under the influence in 2012. During the plea colloquy, the court gave a *Watson*[2] advisement. It told Campos that "driving under the influence of alcohol or drugs, or both, is dangerous to human life. If you continue to drive while under the influence of alcohol or drugs, or both, and you kill someone, you can be charged with murder." When asked if he understood, Campos replied, "Yes."

In 2013, Campos was pulled over for speeding by a Vacaville police officer and admitted that he had been drinking. When the officer investigated his driving history, he learned that Campos was on probation for the 2012 DUI conviction and had been ordered not to drive with any measurable alcohol in his system. Campos's driver's license was also suspended. The officer cited Campos for a probation violation and for driving on a suspended license. (Veh. Code, § 14601.2.) On January 6, 2014, Campos

---

[2] *People v. Watson* (1981) 30 Cal.3d 290 (*Watson*).

was convicted of driving on a suspended license. The plea form he signed included a written *Watson* advisement.

In 2014, Campos attended DUI classes at the Dawn Center which addressed the negative effects of using alcohol and drugs. He also attended a "Victim Impact Panel" organized by Mothers Against Drunk Driving. Campos signed several written *Watson* advisements while participating in these driving under the influence programs.

Between 2008 and 2019, Campos completed eight applications at the Department of Motor Vehicles for a driver's license, identification card, or replacement identification card. Each application for a driver's license or identification card included a written *Watson* advisement which the applicant must review and sign. Campos's driver's license remained suspended on July 4, 2020.

## II.

### *Legal Proceedings*

On January 20, 2021, the Contra Costa County District Attorney filed an amended information charging Campos with second degree murder (§ 187, subd. (a)) (count 1); driving under the influence of alcohol (DUI) causing injury (Veh. Code, § 23153, subd. (a)) with prior convictions (Veh. Code, §§ 23560, 23566) (count 2); driving with over 0.08 percent blood alcohol level causing injury (Veh. Code, § 23153, subd. (b)) with prior convictions (Veh. Code, §§ 23560, 23566) (count 3); failure to stop at the scene of an accident resulting in injury or death (Veh. Code, § 20001, subd. (b)(2)) (count 4); and misdemeanor driving a motor vehicle without a valid driver's license (Veh. Code, § 12500, subd. (a)) (count 5). The information alleged that Campos inflicted great bodily injury upon McDaniel causing him to become comatose as enhancements as to counts 2 and 3 (§ 12022.7, subd. (b)).

6

In 2021, the jury found Campos guilty on all counts and found the special allegations true. The trial court sentenced Campos to 15 years to life on count 1; the three-year upper term on count 2, consecutive to five years for the section 12022.7, subdivision (b) enhancement, stayed pursuant to section 654; the three-year upper term on count 3, consecutive to five years for the section 12022.7, subdivision (b) enhancement, stayed pursuant to section 654; the four-year upper term on count four, concurrent to count 1; and a six-month term in the county jail on count 5, concurrent to counts 1 and 4.

## DISCUSSION

## I.

### *Refusal to Instruct on Vehicular Manslaughter*

In an argument raised primarily to preserve the issue for further review, Campos maintains his right to a fair trial was violated by the trial court's failure to instruct the jury on vehicular manslaughter as a lesser included offense of murder.

### A. Background

Defense counsel asked the court to instruct with CALCRIM Nos. 590 (gross vehicular manslaughter while intoxicated) and 591 (negligent vehicular manslaughter while intoxicated). The prosecutor objected, noting that *People v. Sanchez* (2001) 24 Cal.4th 983 (*Sanchez*), overruled on another point in *People v. Reed* (2006) 38 Cal.4th 1224, *People v. Bettasso* (2020) 49 Cal.App.5th 1050, and *People v. Wolfe* (2018) 20 Cal.App.5th 673 (*Wolfe*) hold that vehicular manslaughter while intoxicated is not a lesser included offense of murder: "It's a fairly well settled area of the law." The trial court agreed with the prosecutor. Finding that it was bound to follow the precedents established by *Sanchez* and other cases, the court stated that it

7

would not instruct on gross vehicular manslaughter while intoxicated or vehicular manslaughter while intoxicated using CALCRIM Nos. 590 or 591.

## B. Analysis

### 1. Governing Law

Campos was charged with murder in violation of section 187, subdivision (a), which defines murder as "the unlawful killing of a human being . . . with malice aforethought." *Watson, supra*, 30 Cal.3d 290 held that a person who kills another while driving under the influence of alcohol may be charged with second degree murder if the circumstances support a finding of implied malice. (*Id.* at pp. 294, 298–299.) This is "informally known as a *Watson* murder." (*Wolfe, supra*, 20 Cal.App.5th at p. 677.)

Section 191.5, subdivision (a) provides that "Gross vehicular manslaughter while intoxicated is the unlawful killing of a human being without malice aforethought, in the driving of a vehicle, where the driving was in violation of Section 23140, 23152, or 23153 of the Vehicle Code, and the killing was either the proximate result of the commission of an unlawful act, not amounting to a felony, and with gross negligence, or the proximate result of the commission of a lawful act that might produce death, in an unlawful manner, and with gross negligence."

"When the prosecution charges a defendant with a *Watson* murder, a vehicular manslaughter charge *may be related to*, but it is *not necessarily included within*, the murder charge." (*Wolfe, supra*, 20 Cal.App.5th at p. 685.) Gross vehicular manslaughter is not a lesser included offense of murder because "the statutory elements of murder do not include all the elements of the lesser offense. Gross vehicular manslaughter while intoxicated requires proof of elements that need not be proved when the charge is murder, namely, use of a vehicle and intoxication. Specifically,

8

section 191.5 requires proof that the homicide was committed 'in the driving of a vehicle' and that the driving was in violation of specified Vehicle Code provisions prohibiting driving while intoxicated." (*Sanchez*, *supra*, 24 Cal.4th at p. 989.) Gross vehicular manslaughter is not a lesser included offense under the statutory elements test because "Although as a factual matter, a murder may be carried out by means of a vehicle and by an intoxicated driver, in the abstract it obviously is possible to commit a murder without committing gross vehicular manslaughter while intoxicated." (*Id.* at p. 988.)

"A trial court must instruct on all lesser included offenses supported by substantial evidence." (*People v. Duff* (2014) 58 Cal.4th 527, 561.) Instructions on lesser *related* offenses, however, are permitted only if both parties agree. (*People v. Jennings* (2010) 50 Cal.4th 616, 668.) "A defendant has no right to instructions on lesser related offenses, even if he or she requests the instruction and it would have been supported by substantial evidence, because California law does not permit a court to instruct concerning an uncharged lesser related crime unless agreed to by both parties." (*Id.* at p. 668.)

"To determine if an offense is lesser and necessarily included in another offense for this purpose, [courts] apply either the elements test or the accusatory pleading test. 'Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 404.)

9

## 2. Campos Was Not Entitled to Instructions on Vehicular Manslaughter

Campos acknowledges that "vehicular manslaughter is not a lesser included offense because of *Sanchez*," and "the trial court and this court are bound by *Sanchez*." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) In his view, however, because the evidence may have supported a finding that "when he elected to drive [he] lacked the subjective awareness that his conduct was dangerous to life that is necessary for a finding of implied malice," the court erred by failing to instruct on a lesser included offense, thus forcing the jury to make an "all-or-nothing choice." Campos asserts that the failure to instruct on a lesser included offense requires reversal. We disagree.

As Campos admits, *Sanchez* holds that gross vehicular manslaughter while intoxicated is not a lesser included offense of murder. (*Sanchez*, *supra*, 24 Cal.4th at p. 989.) In accord with this binding Supreme Court precedent, the Courts of Appeal have uniformly held that instructions on gross vehicular manslaughter while intoxicated or vehicular manslaughter while intoxicated are not required when a defendant is charged with murder arising out of the use of a vehicle. (*People v. Bettasso*, *supra*, 49 Cal.App.5th at p. 1059; *Wolfe*, *supra*, 20 Cal.App.5th at pp. 685–686; *People v. Alvarez* (2019) 32 Cal.App.5th 781,790; *People v. Munoz* (2019) 31 Cal.App.5th 143, 154 (*Munoz*).) We hold, consistent with these authorities, that the trial court did not err when it denied defendant's request to instruct on vehicular manslaughter or gross vehicular manslaughter as lesser included offenses of second degree murder.

### 3. Campos Has Not Established Prejudice

Campos raises two issues in an apparent attempt to establish prejudice arising from the court's refusal to instruct on vehicular manslaughter as a lesser included offense to second degree murder.[3]

First, he argues that he was "precluded from informing the jury that there were lesser forms of homicide that could have been charged, but were not." He cites the trial court's sustaining of the prosecutor's objection to defense counsel's closing argument that "There are other laws designed to hold people accountable." Campos offers no meaningful legal analysis as to why sustaining this objection was erroneous or prejudicial. Accordingly, we treat this point as waived. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [" '[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration' "].)

Even if the point had not been waived, it is not well taken. Given Campos's acknowledgement that the trial court was legally precluded from instructing on vehicular manslaughter as a lesser included offense, allowing defense counsel to refer to uncharged offenses in closing argument would have run the risk of confusing the jury. Moreover, the argument that defense counsel *was* allowed to make—that Campos could not be found guilty of

---

[3] Campos never directly asserts that the trial court's refusal to instruct on vehicular manslaughter was error, instead, making a policy based argument that "the courts must recognize some form of manslaughter must be a lesser included offense to a charge of murder that is based on a vehicular homicide." Because he does not assert error, his assertion of prejudice is irrelevant. We nevertheless briefly address his arguments.

11

murder based on the jury's desire to hold him accountable for McDaniel's death in the absence of other charges—minimized any potential prejudice.[4]

Second, Campos argues that "There was a substantial risk that the jury convicted, even though one of the elements of the offense remained in doubt." He suggests that the jury could have found that he "lacked the subjective awareness that his conduct was dangerous to life," thus "supporting a jury having a reasonable doubt that [he] acted with implied malice" at the time he elected to drive. This argument is inconsistent with the jury's unanimous determination that the evidence supported the charge of second degree murder. We presume that the jury followed the court's instructions requiring the prosecution to prove each element of second degree murder, including implied malice, beyond a reasonable doubt. (*People v. Johnson* (2022) 12 Cal.5th 544, 632.) Campos has identified nothing in the record which rebuts this presumption.

## II.

### *Involuntary Manslaughter Is Not a Lesser Included Offense of Murder*

"Generally, involuntary manslaughter is a lesser offense included within the offense of murder." (*People v. Gutierrez* (2002) 28 Cal.4th 1083, 1145.) Involuntary manslaughter is defined as "the unlawful killing of a human being without malice . . . [¶] . . . [¶] in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and

---

[4] In her closing argument, defense counsel told the jury: "You may not find Mr. Campos guilty of murder solely because you think he should be held responsible for Mr. McDaniel's death. You may not find him guilty of murder simply because you believe that he caused Mr. McDaniel's death and that's the only charge that contemplates that."

12

circumspection." (§ 192, subd. (b).) The statutory definition, however, further provides: "This subdivision shall not apply to acts committed in the driving of a vehicle." (*Ibid.*)

"Involuntary manslaughter is a lesser included offense of murder; thus, a trial court must instruct the jury on involuntary manslaughter '[i]f the evidence presents a material issue of whether a killing was committed without malice, and if there is substantial evidence the defendant committed involuntary manslaughter.' [Citation.] [¶] If a defendant is charged with murder caused by driving a vehicle while intoxicated, however, a trial court cannot give an involuntary manslaughter instruction, because the alleged killing was an 'act[ ] committed in the driving of a vehicle' exempt from the involuntary manslaughter statute. [Citation.] Thus, section 192, subdivision (b) effectively eliminates involuntary manslaughter as a lesser included offense of murder when 'committed in the driving of a vehicle.' (§ 192, subd. (b).)" (*Munoz, supra,* 31 Cal.App.5th at pp. 153–154.)

Campos contends that "a strong case can be made that involuntary manslaughter should be considered a lesser included offense of vehicular murder despite the plain language of section 192[, subdivision] (b)." In his view, the history of the provision shows the Legislature did not intend to "preclude a jury from returning a verdict of involuntary manslaughter as a lesser included offense when a homicide that stems from a vehicular accident is charged as second degree murder."

There are three problems with Campos's argument. First, he did not raise any issue regarding the applicability of section 192, subdivision (b) in the trial court, thereby forfeiting this issue on appeal. (*People v. Saunders* (1993) 5 Cal.4th 580, 589–590 [claims not raised below may not be raised for the first time on appeal].) Second, consistent with its exclusionary language,

13

the Courts of Appeal have applied section 192, subdivision (b), in upholding trial courts' refusal to instruct on involuntary manslaughter when a defendant is charged with a *Watson* murder. (*Munoz, supra*, 31 Cal.App.5th at pp. 151, 153–154; *Wolfe, supra*, 20 Cal.App.5th at p. 686.) Third, if the Legislature does not intend the plain language of section 192, subdivision (b) to apply when a defendant is charged with a *Watson* murder, it is for the Legislature to revise the statute. As the Attorney General points out, the Legislature has amended section 192 three times since *Sanchez* was decided in 2001 without altering the language in subdivision (b) that excludes "acts committed in the driving of a vehicle." (See Stats. 2006, ch. 91, § 2; Stats. 2014, ch. 684, § 1; Stats. 2022, ch. 626, § 3.) We find no error based on the trial court's failure to instruct on involuntary manslaughter.

## III.

### *Instructing the Jury on Vehicle Code Section 23593 Was Not Prejudicial Error*

#### A. Background

The prosecutor requested a special instruction on the *Watson* advisement required by Vehicle Code section 23593 for convictions of Vehicle Code section 23152, subdivision (b). At the instruction conference, defense counsel objected to the special instruction as "cumulative and not necessarily an instruction, but just a statement of the law." The prosecutor responded that the proposed instruction was "relevant to this case in particular, where warnings have been given by a court. It gives that meaning to evidence that's been received in this case, and it's a correct statement of the law." The court agreed to instruct the jury on the *Watson* advisement.[5]

---

[5] The court instructed the jury with a modified version of the proposed special instruction as follows:

14

**B. Analysis**

Campos argues that it was unnecessary for the court to give the special instruction and doing so increased the potential for jury confusion. He points to the evidence which the jury heard about the oral *Watson* advisement the court gave at the time of Campos's 2012 DUI plea—which stated that driving under the influence was "dangerous to human life"—and argues that the special instruction—which stated that driving under the influence is "*extremely* dangerous to human life"—"increase[d] the prospect of an implied malice finding" and therefore constituted error. We find no prejudicial error.

" 'It has long been the law that it is error to charge the jury on abstract principles of law not pertinent to the issues in the case. (*People v. Roe* (1922) 189 Cal. 548, 588.) The reason for the rule is obvious. Such an instruction tends to confuse and mislead the jury by injecting into the case matters which the undisputed evidence shows are not involved.' " (*People v. Mills* (2012) 55 Cal.4th 663, 680.) We agree with Campos that the special instruction was " 'an "abstract" instruction, i.e., that is, "one which is correct in law but irrelevant." ' " (*People v. Cross* (2008) 45 Cal.4th 58, 67.) In many cases, "giving an irrelevant or inapplicable instruction is . . . " ' "only a technical error which does not constitute ground for reversal." ' " (*Ibid.*) "The relevant inquiry here is whether, 'in the context of the instructions as a whole

---

"California Vehicle Code Section 23593 provides that the court shall advise a person convicted [of a violation of] Vehicle Code Section 23152[, subdivision] (b), driving while having a blood alcohol content of .08 percent or greater as follows: You are hereby advised that driving under the influence of alcohol or drugs or both impairs your ability to safely operate a motor vehicle. Therefore, it is extremely dangerous to human life for you to drive while under the influence of alcohol or drugs or both. If you continue to drive while under the influence of alcohol or drugs or both, and, as a result of that driving, someone is killed, you can be charged with murder."

and the trial record, there is a reasonable likelihood that the jury was misled to defendant's prejudice.' " (*People v. Sattiewhite* (2014) 59 Cal.4th 446, 475.)

Campos argues that the jury may have been misled to believe that during his 2012 plea colloquy, he was advised that it is "*extremely* dangerous to human life" to drive under the influence of alcohol when, in fact, the trial court had merely advised him that it was "dangerous" to do so. We find no undue risk of confusion for two reasons. First, the jury was instructed that "Some of the instructions may not apply, depending on your findings about the facts of the case." Because " 'It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions' " (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433), we presume that the jury followed this instruction. Second, Campos disregards evidence of the numerous written *Watson* warnings containing language identical to Vehicle Code section 23593 which he acknowledged receiving and reviewing, arguing, "it is doubtful" that he read the forms. The jury was entitled to conclude otherwise.

Campos further argues that because his guilt on the murder charge hinged not "on whether he had been impaired, or on the dangerousness of his conduct, but on what he *subjectively recognized* when he got into his car and drove"; the special instruction could have contributed to the jury finding that he acted with implied malice. He asserts there is a " '*reasonable chance*, more than an *abstract possibility*,' " of a better result absent the error. (*People v. Wilkins* (2013) 56 Cal.4th 333, 351.) We are not persuaded.

As discussed above, a conviction for second degree murder which arises from an act of driving under the influence may be supported by a finding of implied malice. (*Watson, supra*, 30 Cal.3d at pp. 294, 298–299.) Malice "is implied 'when the killing results from an intentional act, the natural

16

consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his [or her] conduct endangers the life of another and who acts with conscious disregard for life.' " (*People v. Jimenez* (2015) 242 Cal.App.4th 1337, 1358 (*Jimenez*).) "Implied malice is determined by examining the defendant's subjective mental state to see if he or she actually appreciated the risk of his or her actions." (*People v. Superior Court* (*Costa*) (2010) 183 Cal.App.4th 690, 697.) "Malice may be found even if the act results in a death that is accidental." (*Id.* at p. 697.)

*Jimenez, supra,* 242 Cal.App.4th 1337, is one of a line of appellate decisions which have upheld the trial court's admission of uncharged misconduct evidence, such as prior episodes of driving under the influence, to show the requisite mental state supporting a finding of implied malice. (See *People v. Ortiz* (2003) 109 Cal.App.4th 104, 112–116.) In *Jimenez,* the court identified several factors which established implied malice: the defendant had (1) been previously convicted of driving under the influence of alcohol and/or drugs on four occasions; (2) "nearly sideswiped another vehicle with his truck" while driving under the influence of drugs; (3) received a judicial admonition pursuant to Vehicle Code section 23593; (4) completed two substance abuse treatment programs which addressed the potentially fatal consequences of driving under the influence of alcohol or drugs; and (5) nevertheless chose to drive, "with a license revoked on account of his prior DUI conviction," while in the throes of drug withdrawal, resulting in a fatal accident that killed two pedestrians. (*Jimenez*, at pp. 1358–1359.)

Several of the factors identified in *Jimenez* support the jury's finding of implied malice in this case. Campos had suffered a DUI conviction in 2012, at which time the court advised him that driving under the influence was "dangerous to human life." He acknowledged in writing numerous times

17

thereafter that it was "extremely dangerous" to do so. Campos received education about the danger of drinking and driving at the Dawn Center in 2014. After consuming alcohol on July 4, 2020, having his keys taken and being told to "lie down in the van," Campos demanded to have his keys returned so that he could drive to his mother's residence. Campos's girlfriend implored the person who had his keys not to return them because she worried that he would kill himself or someone else. After Anthony C. gave Campos his keys and told him to "sleep it off in the car," Campos took off at a high rate of speed, swerving erratically through a residential subdivision while many people were in or near the street celebrating and setting off fireworks. Given the substantial evidence supporting the jury's finding of implied malice, Campos has not demonstrated there is a " 'reasonable chance' " of a better outcome if the special instruction had not been given. (*People v. Wilkins*, *supra*, 56 Cal.4th at p. 351.) Accordingly, reversal for this "technical error" is not required. (*People v. Cross*, *supra*, 45 Cal.4th at p. 67.)

## IV.

### *The Sentence Enhancements Must Be Stricken*

Campos argues, and the Attorney General agrees, that the evidence was insufficient to support the great bodily injury enhancements pursuant to section 12022.7, subdivision (b) for a victim who becomes comatose. We accept the Attorney General's concession and reverse the true findings on the enhancements attached to counts 2 and 3.[6]

---

[6] We further agree with the Attorney General that resentencing is not required because the five-year term on each enhancement was stayed pursuant to section 654.

## A. Background

As discussed above, the forensic pathologist testified that McDaniel sustained a serious injury to the brain stem which rendered him immediately unconscious and likely caused death within five minutes. The pathologist said that when in a coma "you have no feelings, you don't respond to stimuli, but you can breathe on your own and your heart is still beating. But you're— you have no consciousness." He did not offer an opinion whether McDaniel was comatose prior to death.

Outside the presence of the jury, defense counsel moved to dismiss the section 12022.7, subdivision (b) enhancements on the ground that the prosecution had not proven beyond a reasonable doubt that McDaniel was comatose due to a brain injury. She cited the lack of evidence from emergency personnel that he was in a comatose state prior to his death. The prosecutor opposed, arguing that the pathologist's opinion that McDaniel had survived for five minutes in an unconscious state raised an issue of fact which the jury must decide. The court denied defense counsel's section 1118.1 motion, stating "this is not a case where the record is devoid of evidence on the issue of whether the victim was rendered comatose."

## B. Analysis

Section 12022.7, subdivision (b) states: "Any person who personally inflicts great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony which causes the victim to become comatose due to brain injury or to suffer paralysis of a permanent nature shall be punished by an additional and consecutive term of imprisonment in the state prison for five years." "Under the plain language of the statute, the fact the victim suffered a brain injury is not sufficient to impose the enhancement; the victim must be rendered comatose due to the brain injury."

19

(*People v. Delgado* (2013) 213 Cal.App.4th 660, 667.) "[A] victim is comatose, for the purposes of the enhancement, if she is in a state resembling a coma characterized by profound unconsciousness." (*People v. Cunningham* (2016) 244 Cal.App.4th 1049, 1054.) There must be evidence showing the victim was comatose at some point, but the condition need not be permanent. (*People v. Tokash* (2000) 79 Cal.App.4th 1373, 1378.)

We review the trial court's denial of a motion for acquittal pursuant to section 1118.1 for sufficiency of the evidence. (*People v. Cole* (2004) 33 Cal.4th 1158, 1212–1213.) "In reviewing a claim for sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or special circumstance true beyond a reasonable doubt." (*People v. Jennings*, *supra*, 50 Cal.4th at pp. 638–639.) Here, the evidence established that McDaniel suffered a multitude of injuries in the collision, including a serious brain stem injury which rendered him immediately unconscious and caused death within five minutes. The Attorney General concedes this evidence fails to prove that McDaniel was ever comatose.

We accept this concession and reverse the true findings on the enhancements.[7]

## DISPOSITION

The section 12022.7, subdivision (b) enhancements attached to counts 2 and 3 are stricken. As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting this

---

[7] In light of this holding, we need not address Campos's alternate argument that the trial court erred by failing to instruct the jury as to the technical meaning of "comatose."

20

modification and to forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

_____
Mayfield, J.*

We concur:


_____
Stewart, P. J.


_____
Miller, J.


*People v. Campos* (A164118)


     * Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.